IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| APOD GROUP, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. _____ |
| GLEN LAKES HOMEOWNERS ASSOCIATION, INC., AND CEDRIC L. WILLIAMS, | § § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § § | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT**

Plaintiff APOD Group, LLC ("APOD" or "Plaintiff") files this Complaint for trademark infringement against Glen Lakes Homeowners Association, Inc. ("Glen Lakes") and Cedric L. Williams ("Williams") (collectively, "Defendants" and individually, "Defendant") and alleges as follows:

**I. INTRODUCTION**

1. This is an action for trademark infringement, counterfeiting, contributory counterfeiting, unfair competition, false designation of origin, false advertising, and related claims of trademark infringement under the common laws of Texas. Over the course of a decade, APOD has built a prominent reputation for professional protective services, security detail, and investigative services. Defendants intentionally misappropriated APOD's trademarks to trade off the fame and goodwill of APOD. Therefore, APOD seeks injunctive relief including, but not limited to, a permanent injunction prohibiting Defendants' use of the design mark shown herein, an award of actual damages, and an accounting of Defendants' revenue resulting from their willful wrongful conduct.

## II. PARTIES

2. APOD Group, LLC is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 1910 Pacific Avenue, Suite 12000, Dallas, Texas 75201.

3. Glen Lakes Homeowners Association, Inc., is, and at all relevant times has been an incorporated company organized and existing under the laws of Texas with a principal address at 12801 N Central Expressway, Suite 1401, Dallas, Texas 75243. Glen Lakes Homeowners Association, Inc., may be served with process through its Registered Agent, Fred Shapiro, at SBB Management Company, at 8360 LBJ Freeway, Suite 300, Dallas, Texas 75243.

4. Cedric Williams is an individual residing at 141 Mockingbird Way, Caddo Mills, Texas 75135.

## III. JURISDICTION AND VENUE

5. APOD's claims for trademark infringement, counterfeiting, contributory counterfeiting, unfair competition, false designation of origin, and false advertising arise under federal law, specifically, 15 U.S.C. §§1114 and 1125, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338. This Court further has supplemental jurisdiction over the state law claims asserted herein in accordance with 28 U.S.C. §1367 because those claims arise in the same common nucleus of operative facts as the federal Lanham Act claims.

6. This Court has personal jurisdiction over Defendants. Defendants' acts of infringement of APOD's registered mark were committed in Dallas County, Texas, within the jurisdiction of this Court. Defendants advertised their services under the infringing mark in this state and have transacted business by providing their services to the Glen Lakes community

within Dallas County, Texas. Defendants have engaged in substantial activity within this state and this judicial district and have had substantial contacts there, having purposefully availed themselves of the privilege of conducting activities in the forum. Defendants have caused injury to APOD within this state and within this judicial district.

7.  Venue is proper in the District of Northern Texas, Dallas Division, pursuant to 28 U.S.C. §1391, as Defendant Glen Lakes may be found or transacts business in this district and a substantial part of the events giving rise to APOD's claims occurred in this district.

### IV. FACTS

8.  APOD is a Service-Disabled Veteran Owned Small Business (SDVOSB) providing security, protection detail, and investigation services. Noah Graeme, the company's founder and president, served in the United States Navy for over 14 years. In addition to his role as an aviation rescue swimmer, he also served as a personal security detail operator in Afghanistan, providing high-risk protection detail to prominent individuals. In 2013, after his time in the Navy, Mr. Graeme founded APOD.

9.  The company was formed in Maryland and later expanded its services nationwide. Now, APOD offers its services globally. When Mr. Graeme decided to create a logo for his company, he wanted a design to capture the company's professionalism, dedication to service, and high standards. Thus, he created the image shown below for use in all the company's advertising materials and on company uniforms. The shield represents security, the chess pieces represent the strategy and tactics involved in executive protection, and the two 9-point wreaths represent a high level of service and elegance:



10. APOD has continuously used its Mark (or "Design") in its advertising materials, on social media channels, and on uniforms since at least as early as 2015.

11. In 2021, Mr. Graeme sought federal trademark protection for the Design. That application matured into U.S. Trademark Registration No. 6795404, attached hereto as Exhibit 1. Pictures of the Mark as it is currently used on the company's uniforms are shown below:







12. On June 24, 2023, Mr. Graeme was visiting a home for sale in the Glen Lakes community in Dallas, Texas with his family. When he approached the community's security gate, Mr. Graeme noticed that one of the security guards was wearing a polo shirt with the exact

COMPLAINT FOR TRADEMARK INFRINGEMENT                                Page **5** of **19**

same logo as the one he had created. Pictures of the infringing uniform are attached hereto as Exhibit 2 and also shown below:





13.     Mr. Graeme later learned that a former APOD employee, Cedric Williams, had misappropriated the Mark for the Glen Lakes Homeowners Association. In fact, Mr. Graeme learned that Williams had given one of his old APOD polo shirts to someone in the Glen Lakes HOA as an example for the HOA to use in creating its own uniforms.

**COMPLAINT FOR TRADEMARK INFRINGEMENT**                                        Page **6** of **19**

14. Mr. Graeme further learned that Glen Lakes had issued the infringing uniforms to around ten security guards. The infringing uniforms were used by Glen Lakes for several months before Mr. Graeme learned of this infringement.

15. On July 24, 2023, Mr. Graeme, through his previous counsel, sent a demand letter to Glen Lakes informing it of its infringing acts and requesting the preservation of all documents related to the infringement. As of the date of this filing, Mr. Graeme has not received a response from Glen Lakes.

16. APOD's continuous and widespread use of its Mark in commerce in connection with its services has earned significant public recognition.

17. Additionally, APOD's continuous and widespread use of its Mark in commerce in connection with its services has earned common law rights.

18. The federal trademark registration and use in commerce of APOD's Mark provides notice to Defendants of APOD's ownership and exclusive rights in its Mark.

19. The demand letter sent to Glen Lakes on July 24, 2023, also provided notice of APOD'S ownership and exclusive rights in its Mark.

20. On information and belief, Defendants provided security services to the Glen Lakes community in Dallas, Texas, using uniforms with an identical design as APOD's Mark, an identical color scheme, and an identical placement of such design.

21. On information and belief, Defendant Glen Lakes was not a licensed security services contractor at the time of the acts described herein, in accordance with § 1702.102 of the Texas Occupations Code. Attached hereto as Exhibit 3 is a true and correct website screenshot of the Texas Online Private Security database demonstrating the expired status of Defendant Glen Lakes's license.

22. Defendants' use of its security guard uniforms in connection with providing security services is identical to or substantially similar to APOD's use of its own security guard uniforms in connection with its security services. Such wrongful use by Defendants creates an impression in consumers' minds that APOD is affiliated with or sponsors the Glen Lakes security services.

23. Defendants' use of the identical Design on its uniforms combined with the words "security officer" while providing security services to the Glen Lakes community falsely implies that Defendants' unlicensed security services are somehow affiliated with, sponsored by, or provided by APOD, a properly licensed security services provider.

24. Consumers are likely to be confused as to whether the services provided by Glen Lakes are endorsed, sponsored, or approved by APOD, or affiliated with the services provided by APOD.

25. Consumers are likely to be or have actually been misled by Defendants in believing that its security services are duly licensed by the State of Texas.

26. By using APOD's Mark and identical or substantially similar security guard uniforms, Defendants have attempted and/or are attempting to trade on the business success and goodwill of APOD and its Mark.

27. By using APOD's Mark and identical or substantially similar security guard uniforms, Defendants are attempting to create an association or affiliation between their services and those of APOD.

28. As a result of Defendants' use of the identical mark as APOD's federally registered trademark and common law trademark, APOD has suffered great and irreparable injury.

29. APOD is informed and believes, and based thereon alleges, that Defendants will continue to use the identical service mark in connection with competing services, and, as a result, APOD will continue to suffer great and irreparable injury, unless Defendants be enjoined from doing so.

## V. CLAIMS

### (Count 1 – Trademark Infringement)

30. APOD incorporates herein by reference each and every allegation in the preceding paragraphs.

31. As its first ground for relief, APOD alleges federal trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

32. APOD is informed and believes, and based thereon, alleges that Defendants have willfully infringed and/or contributed thereto, APOD's Mark by Defendants' use in interstate commerce the identical Mark and similar security guard uniforms for directly competing services. Defendants had actual or constructive knowledge of APOD's prior, extensive, and continuous use of its Mark, but nevertheless, used APOD's Mark without the consent of APOD in connection with competitive services, which is likely to cause confusion in and deceive the consuming public as to the affiliation, connection, or association of Defendants with APOD.

33. Moreover, APOD has expended great effort and significant amounts of money in protecting, advertising, promoting, and developing the recognition of its Mark with the result being that, long before the acts of the Defendants complained of herein, the public had come to recognize such Mark as a reference to the superior services offered by APOD. Such public recognition constitutes goodwill of immense value, which belongs exclusively to APOD.

34. APOD's Mark has acquired recognition and common law rights within the United States, particularly in Texas, as signifying professional protective services, security detail, and investigative services offered by a specific source, such recognition having been acquired long prior to the conduct of Defendant complained of herein.

35. Defendants have willfully and intentionally infringed and/or contributed to the infringement of APOD's trademark rights by various acts, including advertising and displaying the confusingly similar Design mark on its security guard uniforms at its establishment. Defendants' actions are without the permission or authority of APOD and are likely to continue to cause confusion, mistake and to deceive as to an affiliation, connection, or association between APOD and Defendants.

36. Defendants' infringement is malicious and oppressive, and Defendants have willfully and deliberately committed such malicious and oppressive conduct. As a result, APOD has suffered great and irreparable harm and is therefore entitled to receive the maximum damages allowable under the Lanham Act from and against the Defendants.

37. Defendants will continue to conduct the willful acts of trademark infringement, and as a result, APOD will continue to suffer great and irreparable harm, unless Defendants are enjoined from committing such acts.

### (Count 2 – Counterfeiting)

38. APOD incorporates herein by reference each and every allegation in the preceding paragraphs.

39. As its second ground for relief, APOD alleges counterfeiting of a federally registered trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40. APOD has used its Mark continuously in United States commerce since at least as early as 2015 for its security, protective, and investigative services. APOD has invested substantial time, effort, and financial resources in promoting its Mark in connection with the marketing and sale of its services in interstate commerce. The consuming public recognizes the Design mark and associates it with APOD.

41. APOD's Mark is registered on the Principal Register of the United States Patent and Trademark Office for private investigation; security guarding for facilities; security services for individuals and business persons traveling internationally and domestically, namely, providing foreign country security briefings, embassy information for security purposes and security reports; security services, namely, providing executive protection; security threat analysis for protecting personal property; security threat analysis for protecting public safety; personal security consultation. Defendant's counterfeit security guard services are identical to those of APOD.

42. The spurious trademark appearing on uniforms and other advertising material in connection with the counterfeit services provided by Defendants in commerce is identical to or substantially indistinguishable from APOD's genuine registered mark.

43. Defendants' use of APOD's mark on its security guard uniforms in connection with identical security services is likely to cause confusion or mistake or to deceive consumers into believing that APOD is the source of Defendants' services. APOD did not authorize or license the use of its Mark for Defendants' use.

44. Upon information and belief, Defendants have advertised and offered its services for sale in commerce using APOD's identical Design mark with the intention of misleading,

deceiving, or confusing consumers as to the origin of its services and of trading on APOD's reputation and goodwill.

45. Defendants' unauthorized use of its spurious mark in interstate commerce as described above constitutes trademark counterfeiting under 15 U.S.C. § 1114(1).

46. As a direct and proximate result of Defendants' trademark counterfeiting, APOD has suffered and will continue to suffer a loss of income, profits, and goodwill. Defendants have acquired and will continue to unfairly acquire income, profits, and goodwill.

47. Defendants' acts of counterfeiting will cause further irreparable injury to APOD if Defendants are not restrained by this Court from further violation of APOD's rights. APOD has no adequate remedy at law.

**(Count 3 – Contributory Counterfeiting)**

48. APOD incorporates herein by reference each and every allegation in the preceding paragraphs.

49. As its third ground for relief, APOD alleges contributory counterfeiting of a federally registered trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

50. APOD has used its mark continuously in United States commerce since at least as early as 2015 for its security, protective, and investigative services. APOD has invested substantial time, effort, and financial resources in promoting its mark in connection with the marketing and sale of its services in interstate commerce. The consuming public recognizes the Design mark and associates it with APOD.

51. APOD's Mark is registered on the Principal Register of the United States Patent and Trademark Office for private investigation; security guarding for facilities; security services

for individuals and business persons traveling internationally and domestically, namely, providing foreign country security briefings, embassy information for security purposes and security reports; security services, namely, providing executive protection; security threat analysis for protecting personal property; security threat analysis for protecting public safety; personal security consultation. Defendant's counterfeit security guard services are identical to those of APOD.

52. The spurious trademark appearing on uniforms and other advertising material in connection with the counterfeit services provided by Defendants in commerce is identical to or substantially indistinguishable from APOD's genuine registered mark.

53. Defendants' use of APOD's mark on its security guard uniforms in connection with identical security services is likely to cause confusion or mistake or to deceive consumers into believing that APOD is the source of Defendants' services. APOD did not authorize or license the use of its Mark for Defendants' use.

54. Upon information and belief, Defendant Williams has distributed or caused to be distributed the counterfeit services provided by Defendant Glen Lakes without authorization or license from APOD. Distributing or causing to be distributed the counterfeit services was necessary for Defendant Glen Lakes's intentional use of a counterfeit mark.

55. Upon information and belief, Defendant Williams provided goods or services to Defendant Glen Lakes with the intention that Defendant would put the goods or services to use in committing a counterfeiting violation.

56. The unauthorized actions of Defendant Williams in interstate commerce as described above constitute contributory trademark counterfeiting under 15 U.S.C. §§ 1114(1) and 1117(b)(2).

57. As a direct and proximate result of Defendant Williams's contributory trademark counterfeiting, APOD has suffered and will continue to suffer a loss of income, profits, and goodwill. Defendants have acquired and will continue to unfairly acquire income, profits, and goodwill.

58. Defendant Williams's acts of contributory counterfeiting will cause further irreparable injury to APOD if Defendants are not restrained by this Court from further violation of APOD's rights. APOD has no adequate remedy at law.

### (Count 4 – Unfair Competition and False Designation of Origin)

59. APOD incorporates herein by reference each and every allegation in the preceding paragraphs.

60. As its fourth ground for relief, APOD alleges federal unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61. By misappropriating and using APOD's trademark in commerce, Defendants misrepresent and falsely describe to the general public the origin and source of the counterfeit services and create a likelihood of confusion by purchasers as to the source of those services.

62. Defendants' unauthorized and unlicensed advertising, distributing, offering for sale, and/or selling the counterfeit services creates express and implied misrepresentations that those services were provided, authorized, or approved by APOD, which will damage both APOD and the public and which will profit Defendants.

63. Upon information and belief, Defendants have advertised, provided, and offered their services for sale using the Design mark and APOD's identical security guard uniforms with the intention of misleading, deceiving, or confusing consumers as to the origin of their services and of trading on APOD's reputation and goodwill.

64. Defendants' unauthorized marketing, provision, and sale of its services in interstate commerce using APOD's Design mark and identical security guard uniforms constitutes the use of a false designation of origin or false representation that wrongfully and falsely designates Defendants' services as originating from or connected with APOD in violation of 15 U.S.C. § 1125(a).

65. As a direct and proximate result of Defendants' acts of unfair competition, APOD has suffered and will continue to suffer a loss of income, profits, and goodwill. Defendants have acquired and will continue to unfairly acquire income, profits, and goodwill.

66. Defendants' acts of unfair competition will cause further irreparable injury to APOD if Defendants are not restrained by this Court from further violation of APOD's rights. APOD has no adequate remedy at law.

### (Count 5 – False Advertising)

67. APOD incorporates herein by reference each and every allegation in the preceding paragraphs.

68. As its fifth ground for relief, APOD alleges false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69. Defendants' use of the identical Design on its uniforms in combination with the words "security officer" while providing security services to the Glen Lakes community is use in commercial advertising or promotion of literally false and/or misleading representations of fact that misrepresents the characteristics and qualities of Plaintiff's properly licensed security services and Defendants' improperly licensed security services in violation of 15 U.S.C. § 1125(a).

70. Defendants' representations that its security services are properly licensed under the Texas Occupations Code are literally false and/or misleading.

71. Defendants' literally false and/or misleading representations of fact actually deceived or tended to deceive a substantial number of reasonable consumers of security services that Defendants were properly licensed to provide such services. Defendants' claims were material to consumers' purchasing decisions. In addition, these false and/or misleading representations of fact continue to actually deceive or tend to deceive a substantial number of reasonable consumers of security services and continue to be material to consumers' purchasing decisions.

72. On information and belief, Defendants' acts of false advertising described herein were intended to cause and did, in fact, cause deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Defendants' improperly licensed services and Plaintiff's properly licensed services.

73. As a result of Defendants' acts described above, Plaintiff has suffered and will continue to suffer irreparable harm in the form of damage and injury to its business, reputation, and goodwill. Plaintiff will continue to sustain a serious loss of revenues and profits unless the Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising.

**(Count 6 – Common Law Trademark Infringement)**

74. APOD incorporates herein by reference each and every allegation in the preceding paragraphs.

75. As its sixth ground for relief, APOD alleges trademark infringement in violation of Texas common law and other applicable common law.

76. APOD's Design mark is eligible for protection, and APOD is the senior user of the Mark. There is a likelihood of confusion between APOD's Mark and the identical Design mark that Defendants are using.

77. By making unauthorized use of APOD's Design mark, Defendants are committing trademark infringement in violation of Texas common law and other applicable common law.

78. Defendants' unauthorized use of APOD's mark is knowing, intentional, and willful. As a result of Defendants' acts of trademark infringement, APOD is suffering irreparable harm, for which it has no adequate legal remedy. Unless and until Defendants are enjoined by this Court, Defendants will continue to commit acts of trademark infringement and will continue to confuse the public and cause irreparable harm to APOD.

79. APOD is entitled to recover from Defendants their profits, all damages that APOD has sustained from Defendants' infringement and unfair competition, and the costs of the action.

## VI. JURY DEMAND

80. Plaintiff APOD hereby demands a jury trial.

## VII. PRAYER

WHEREFORE, APOD respectfully requests the following:

A. That this Court, pursuant to its authority under 15 U.S.C. §1116, issue a preliminary and permanent injunction enjoining Defendants Cedric Williams and Glen Lakes Homeowners Association, Inc. and its officers, agents, servants, employees, and attorneys and all those persons in active concert or participation with any or each of the Defendants from the acts described of in this Complaint;

B. That this Court order Defendants to provide an accounting of all sales, revenues, and profits related to Defendants' services that infringe APOD's Mark and that were falsely designated as being sponsored by, approved by, affiliated with, or associated with APOD;

C. That this Court, in accordance with 15 U.S.C. § 1118, order that all labels, signs, prints, packages, wrappers, receptacles, advertisements, and all other materials (a) in the Defendants' possession or control and (b) bearing the Design mark, or any confusingly similar mark, be delivered up and destroyed;

D. That this Court, in accordance with the Lanham Act, award APOD all Defendants' profits from the aforesaid acts of trademark infringement, counterfeiting, contributory counterfeiting, and unfair competition;

E. That this Court award to APOD the maximum damages allowable under the Lanham Act, 15 U.S.C. §1051 et seq., including but not limited to treble damages;

F. That this Court, in accordance with the Lanham Act, find this case to be exceptional in APOD's favor and award APOD its reasonable attorney's fees, costs, and expenses of this action;

G. That this Court, award APOD pre-judgment and post-judgment interest at the maximum allowable interest rate;

H. That this Court award APOD, as an equitable remedy, the costs and expenses reasonably necessary for APOD to undertake a corrective advertising campaign to market and that the Design mark is exclusively associated with APOD and not the Defendants; and

I. That this Court award APOD such other and further relief, both general and special, at law or in equity, to which APOD shows itself to be justly entitled and which this Court deems just, equitable, and proper.

Dated:  December 4, 2023

Respectfully submitted,

By:/s/ *Vincent J. Allen*
**Vincent J. Allen**
State Bar No. 24012209
**Theodore G. Baroody**
State Bar. No. 01797550
**Sharon N. Hise**
State Bar No. 24132414
Carstens, Allen & Gourley, LLP
7500 Dallas Parkway, Suite 300
Plano, Texas 75024
(972) 367-2001 (Telephone)
(972) 367-2002 (Facsimile)
allen@caglaw.com (Email)
baroody@caglaw.com (Email)
hise@caglaw.com (Email)

ATTORNEYS FOR PLAINTIFF